**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ZEMENDER W.,

      Plaintiff,

    v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 24 CV 5716

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Zemender W. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse the Commissioner's decision [16] is granted, the Commissioner's motion for summary judgment, [24]; [25], is denied, and the case is remanded for further administrative proceedings.[1]

### Background

In May 2022, plaintiff applied for a period of supplemental security income, alleging an onset date of May 24, 2022. [13-1] 29. The claims were denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 29, 45. The Appeals Council denied review in May 2024, [*Id.*] 1–3, and plaintiff appealed to this Court. The Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [13-1] 31. At step two, the ALJ determined that plaintiff had the following severe impairments: "asthma, unspecified visual loss, antisocial personality disorder, bipolar I disorder, unspecified depressive disorder, neurodevelopmental disorder not otherwise specified, and substance use disorder" [*Id.*] 31–33. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 33–36. Before turning to step four, the ALJ ruled that plaintiff had

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record, [13-1]; [13-4], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [9].

the residual functional capacity ("RFC") to perform light work except that he (1) could only lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) could stand, walk, or sit for six hours in an eight-hour workday; (3) could occasionally climb stairs and ladders; (4) could frequently handle with the bilateral upper extremities; (5) could tolerate occasional exposure to extremes of cold and heat, wetness, and humidity as well as exposure to fumes, odors, dusts, gases, and other pulmonary irritants; (6) could perform simple routine tasks; (7) could tolerate occasional changes in a routine work setting; (8) could not interact with the public but could occasionally interact with co-workers and supervisors. [*Id.*] 36–43. At step four, the ALJ held that plaintiff had no past relevant work. [*Id.*] 43. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: sorter (43,000 jobs), routing clerk (40,000 jobs), and collator operator (22,000 jobs). [*Id.*] 44. Accordingly, the ALJ ruled that plaintiff was not disabled. [*Id.*] 45.

### Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

### Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ: (1) failed to address important medical evidence in his decision; (2) did not follow SSA's policy in determining plaintiff's RFC; (3) ignored SSA policy in not obtaining and exhibiting prior claim files; and (4) did not issue a subpoena to obtain documents necessary for a full presentation of the case. [16] 6–12. The Court agrees that the ALJ's decision failed to address important medical evidence. Accordingly, the Court finds that a remand is warranted to correct this error.

Plaintiff was previously found disabled and eligible for benefits after a 2018 hearing before an ALJ. [13-1] 196–99. The ALJ who presided over the 2018 hearing found that plaintiff's impairments, "bipolar disorder with psychotic features; personality disorder; and alcohol abuse/dependence[,]" met the criteria of a section 12.03 listed impairment. [*Id.*] 196–98. Plaintiff's benefit payments under that determination were suspended after he was incarcerated in August of 2020. [13-4] 2463; [16] 2; *See* 20 C.F.R. §§ 416.201, 416.1325. Once plaintiff's incarceration

spanned a full 12 months, his eligibility for benefits was terminated in accordance with SSA's rules. [16] 2; *See* 20 C.F.R. § 416.1335; 42 U.S.C. § 1383(j)(1). As such, plaintiff was required to file a new application and prove that he met the criteria for benefits before payments could resume. *See* 20 C.F.R. § 416.1335; 42 U.S.C. § 1383(j)(1) (citing 42 U.S.C. § 1382). Plaintiff filed this application on May 24, 2022, shortly after his release from custody. [16] 2. As discussed above, the application was denied after a 2023 hearing before an ALJ and is now before this Court. [*Id.*] 3.

The ALJ in the instant case found that plaintiff suffered from several severe impairments. Relevant to plaintiff's motion for remand, the ALJ found that plaintiff suffered from "antisocial personality disorder, bipolar I disorder, unspecified depressive disorder, neurodevelopmental disorder not otherwise specified, and substance use disorder[.]" [13-1] 31. While these mental impairments are similar to those identified after the 2018 hearing, this time the ALJ found that plaintiff's impairments did not meet the severity of any listed impairment. [*Id.*] 33–36. Moreover, the ALJ determined that plaintiff's RFC left him with the capability to perform jobs that exist in sufficient numbers throughout the country and thus that plaintiff was not disabled. [*Id.*] 44–45.

In evaluating plaintiff's mental impairments, the ALJ relied primarily on four sources of evidence: (1) the results of a consultative psychiatric exam performed by Dr. Fine; (2) prior administrative medical findings from the state agency psychological consultants; (3) plaintiff's testimony at the hearing; and (4) the lack of other record evidence suggesting that plaintiff's mental impairments were severe enough to preclude him from working. [*Id.*] 34–36, 39, 41–43. Notably, the ALJ did not discuss the fact that plaintiff had previously been found disabled due to similar mental impairments, the record evidence that supported that prior finding, nor the records from plaintiff's incarceration regarding his mental health.

Dr. Fine evaluated the plaintiff in November 2022 as a consultative examiner for the Bureau of Disability Determination Services. [13-4] 2864. After completing a 45-minute formal mental status examination, Dr. Fine documented his summary and conclusion as follows:

> The claimant is a 45-year-old man who presents with a learning issue, along with a history consistent with bipolar I, currently mildly depressed but improved with medication. There has been some suicidality in the past. Along with this he has psychotic features and anxiety features. There is no criteria for schizophrenia. The overall psychiatric issues are improved with treatment. However, the overall behavior pattern is consistent with antisocial personality disorder and is complicated by ongoing alcohol and marijuana use. The overall psychiatric picture seems impactful for his functioning.
> . . . .

By history the claimant does not appear to be able to manage his funds in his best interest.

[*Id.*] 2867.

The ALJ reviewed Dr. Fine's notes and determined that the examination reflected "relatively normal . . . findings[.]" [13-1] 42–43. Specifically, the ALJ noted that Dr. Fine recorded[3] that plaintiff's "appearance and grooming, judgment, insight, immediate/recent/remote memory, sensorium functions, speech/language, and thought processes were appropriate, good/fair, intact, normal, within normal limits, or unremarkable[.]" [*Id.*] 39. However, the Court notes that for judgment, insight, memory, sensorium functions, and thought processes, Dr. Fine did not provide any separate conclusion. [13-4] 2866–67. Dr. Fine simply explained the test given, typically a couple of questions, and recorded plaintiff's response. [*Id.*]. For example, plaintiff could name his high school and parents, but not the current or past Presidents of the United States. [*Id.*] 2866. Plaintiff knew the number of weeks in a year and nickels in $1.15, but when asked to list 5 large cities could only answer "Chicago." [*Id.*]. Dr. Fine also recorded plaintiff's description of suffering from hallucinations and paranoid ideas, but wrote "[n]o indication of delusions, confusions or hallucinations [were] noted throughout the interview" [*Id.*]. Nowhere in his decision does the ALJ even acknowledge that Dr. Fine determined that plaintiff's "psychiatric picture seems impactful" nor how the ALJ determined that the described tests demonstrate "appropriate, good/fair, intact, normal, within normal limits, or unremarkable" findings.[4]

The ALJ also relied on the prior administrative medical findings from the state agency psychologists who reviewed plaintiff's records. [13-1] 41–42. These psychologists, primarily citing Dr. Fine's exam notes but also identifying some other medical records, determined that while plaintiff had moderate limitations in several areas, his symptoms "would not markedly impair [his] capacity to complete a normal work week." [13-1] 176–78, 188–89.

Plaintiff's testimony during the hearing and functional self-evaluation were cited by the ALJ as evidence that plaintiff's hallucinations and paranoia were not as disruptive to his ability to work as claimed. [*Id.*] 39. The ALJ points out that plaintiff testified "that he retains the ability to perform a variety of tasks independently that require sustained attention and concentration including reading books and playing

---

[3] Throughout the opinion the ALJ also cites the record of plaintiff's primary care consultative exam in support of this statement. [13-1] 39, 42. The Court notes that those records only stated three observations from the mental status exam: (1) plaintiff was "alert and oriented x 3[;]" (2) "[h]ygiene and grooming were good[;]" and "[o]verall effort and cooperation were satisfactory." [13-4] 2860.

[4] It is possible that the ALJ made this determination because the state agency psychologists determined that plaintiff's mental health limitation were only moderate. [13-1] 176–78, 188–89. But if this is what happened, the ALJ needs to explain it in a way that allows the Court to trace his reasoning.

chess online[.]" [*Id.*] 39. It is unclear to the Court how plaintiff's claims of paranoia are undercut by his ability to read books or play chess online. Further, plaintiff explained during the hearing that the hallucinations he experiences–a ringing that escalates into a scream and shadow trails of individuals "walking past me continuously"–happen when he is around other people. [*Id.*] 85. There is no record evidence that others are near plaintiff when he reads books or plays chess online.

Finally, the ALJ identifies that plaintiff has not required subsequent crisis intervention, psychiatric hospitalization, and is currently not undertaking any treatment to address his mental symptoms. [*Id.*] 39. But "one of the most serious problems in the treatment of mental illness" is "the difficulty of keeping patients on their medications." *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010). As such, the ALJ should not draw negative inferences regarding lack of treatment without exploring plaintiff's stated reasons for lack of treatment or if plaintiff's illness is preventing treatment. *Marva S. v. O'Malley*, No. 21 CV 5922, 2025 WL 27490, at *2 (N.D. Ill. Jan. 3, 2025) (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)). The ALJ's decision lacks any discussion as to the reasons why plaintiff may not be obtaining mental health treatment.

In addition to the information discussed above, there were several other lines of evidence on which the ALJ is silent. There are the medical records from the prior claim where plaintiff was determined to be disabled. *See* [13-1] 601–11. These treatment notes indicated, among several other things, that plaintiff suffered from moderately severe hallucinations and that his mental impairments impeded his ability to follow instructions. [13-1] 604. There are also medical records from when plaintiff was incarcerated. *See* [13-4] 2456–706. Those records document that plaintiff had poor judgment and insight and was experiencing hallucinations. [13-4] 2640, 2679. While both of these sets of records are documenting a time from before plaintiff's alleged onset date, that does not mean those opinions are outdated. *Maria P. v. Kijakazi*, No. 19 CV 3477, 2022 WL 1523639, at *4 (N.D. Ill. May 13, 2022). This is especially true when the onset date is due to plaintiff's release from incarceration and not a change in symptoms. While the ALJ is not required to discuss every snippet of evidence, the ALJ cannot ignore entire lines of evidence contrary to his conclusion.[5] *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

After reviewing the ALJ's decision regarding plaintiff's mental impairments as well as the evidence discussed and omitted, the Court finds that the ALJ's decision lacks substantial evidence. The record medical evidence from plaintiff's prior hearing and his incarceration are relevant and add context to the very limited medical records created after plaintiff was released from custody. The Commissioner argues that the lack of discussion regarding that evidence was not an error because "plaintiff was

---

[5] The Court acknowledges that the ALJ is not bound by a prior finding of disability, *Reginald J. v. O'Malley*, No. 22 C 6459, 2024 WL 5119900, at *3 (N.D. Ill. Dec. 16, 2024), but this does not absolve the ALJ from considering all relevant lines of evidence.

found disabled" prior to his incarceration and "there was no presumption that his disability continued" during or after his incarceration. [25] 5, 9–10. But "the ALJ should consider the record as a whole, including pre-onset evidence[.]" *Johnson v. Sullivan*, 915 F.2d 1575 (7th Cir. 1990) (unpublished table decision); *see also Robert M. W. v. Saul*, No. 19 C 3165, 2020 WL 6801842, at *5 (N.D. Ill. Nov. 19, 2020). The Court finds this especially important here because the only psychiatric exam on record vaguely concluded that plaintiff's impairments were "impactful" without explaining how they impacted plaintiff's ability to work. [13-4] 2867. Thus, given the limited medical evidence created after plaintiff's onset date, the omission of any discussion regarding plaintiff's medical records from his prior hearing or incarceration means that the ALJ has not built the required "logical bridge" between the evidence and his conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

The Court is not holding that the records which the ALJ failed to discuss must lead to a similar result as the 2018 hearing. There could be many reasons why an ALJ still finds plaintiff not disabled after reviewing those records along with the rest of the evidence, but that conclusion must be explained in the decision. "The court has to be able to trace the path of the ALJ's reasoning." *Sherise K. v. Dudek*, No. 24 C 11199, 2025 WL 1260831, at *2 (N.D. Ill. Apr. 30, 2025).

For the reasons stated above, the Court finds that the ALJ's decision regarding the severity of plaintiff's mental impairments is not supported by substantial evidence. This constitutes a reversible error requiring remand. As such, the Court need not address plaintiff's remaining contentions as to how the ALJ erred.

## Conclusion

Plaintiff's motion to reverse and remand [16] is granted and defendant's motion for summary judgment, [24]; [25], is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 18, 2026**